2849.   DARBY *v.* THE STATE.

1. Where it appeared that the defendant shot the deceased with a pistol
from his coat-pocket, and the contention of the State was that the kill-
ing was deliberate and intentional, and the contention of the defendant
was that the discharge of the pistol was accidental and caused by the
fact that his hand was maimed, so that when he went to withdraw the
pistol from his pocket his finger caught over the trigger, and he pulled
on it thinking that it was the trigger guard, it was error for the court,
in charging the jury, to neglect entirely to instruct them as to the de-
fense of accidental homicide, especially in view of the fact that the
judge gave a number of instructions to the jury as to what would be
the legal effect if, though the discharge of the pistol was somewhat acci-
dental, the defendant was not entirely free from culpability.

2. Where it appeared that immediately after the shooting a witness went
up to the defendant, who was still standing at the scene of the shooting,

and walked a few steps away with him, and asked him why he shot, and he then and there said that he shot unintentionally, this statement being made in less than two minutes from the time of the shooting and under circumstances tending to negative premeditation, it should have been admitted in evidence as a part of the res gestæ.

3. An alleged dying declaration is not admissible in evidence unless it was made at a time when the declarant was in the article of death, notwithstanding that at the time it was made the declarant may have believed that he was going to die, and notwithstanding that he died immediately following an operation which took place a few hours later; and it was error for the court to instruct the jury that they should consider the declaration as a dying declaration in the event it was made between the time of the declarant's receiving the wound and the time of his death, and at a time "when he was conscious that he would die, and he was aware of his approaching death," without instructing them that the declaration should not be received unless he was actually in the article of death at the time.

4. Except as indicated in the foregoing headnotes, there was no error.

DECIDED SEPTEMBER 23, 1911.

Conviction of voluntary manslaughter; from Toombs superior court—Judge Rawlings. June 15, 1910.

*H. D. D. Twiggs, Williams & Giles, Jones & Sparks, G. W. Langford, Hines & Jordan,* for plaintiff in error.

*Alfred Herrington,* solicitor-general, *W. W. Larsen,* contra.

POWELL, J. This court, after carefully considering the many assignments of error contained in the somewhat voluminous record, has finally been able to agree that the trial was free from error except as to the points sets out in the first three headnotes preceding this opinion, and even as to them the Chief Judge is not convinced that what seems to the majority of the court to be error was such error as to justify a new trial.

1. The homicide occurred while the defendant and the deceased were having an altercation in a public street. The defendant, it seems, used opprobrious language to the deceased (though there was some denial of this) ; the deceased struck the defendant a blow in the face with his hand, and, according to the defendant's statement and according to the testimony of the defendant's witnesses, threw his hand towards his pocket as if to draw a weapon. At this moment the pistol of the defendant, which was in his side coat-pocket, was fired, and the mortal wound was inflicted. The defendant stated to the jury, and contended, that this firing of the pistol was accidental. It appears that the defendant was a small man, afflicted with a rheumatic infirmity in his lower limbs; and in addition to this he had

been maimed by having the thumb and one finger cut from his right hand. The deceased was a large, strong man. The defendant stated to the jury, and contended, that when he was struck by the deceased, and saw him make a movement as if to continue the assault, he reached in his pocket with his maimed hand in order to get his pistol, so as to defend himself if the deceased in fact pursued the attack, and that in attempting to withdraw the pistol, which was an automatic revolver, his finger caught over the trigger, which he mistook for the guard, and the pulling upon the trigger caused the pistol to fire. The judge in his charge nowhere instructed the jury upon the theory of an accidental shooting, except in the following language: "If you find, from all the facts and circumstances of the case, that the defendant was making an attack upon the deceased with an unlawful intention to kill, unjustifiably, and the defendant's pistol was discharged accidentally, and the deceased was killed, I charge you that such killing would constitute the crime of murder." It may be further noted that he also instructed the jury upon the subject of involuntary manslaughter in the commission of an unlawful act, as well as in the commission of a lawful act without due circumspection. We deem the omission of the court to instruct the jury as to the defense of accidental homicide a material error. If the defendant's statement as to the manner in which the pistol was fired be true, he was guilty of no offense, and the court should so have informed the jury.

2.   The other members of the court somewhat share the doubt of the Chief Judge as to the point we are now about to discuss, but, after careful consideration, we have decided that the court erred in his ruling upon it. As soon as the shot was fired, friends of each party ran up. One of them took the deceased to a buggy, and the statement which the deceased there made as to how the homicide occurred was admitted by the judge as a part of the res gestæ. The court, however, rejected the testimony of another person, to the effect that he immediately approached the defendant and withdrew with him a few steps from the place where he was standing when he did the shooting, and asked him why he shot, to which the defendant replied, "I did not intend to shoot." This all occurred within less than two minutes from the time of the shooting, and the surrounding circumstances concerning the making of the statement are detailed by the witnesses. In the judgment of the ma-

jority of the court, the statement was sufficiently close to the act, and was apparently sufficiently free from afterthought (or rather forethought and deliberation) to require its admission as a part of the res gestæ.

3. An alleged dying declaration of the deceased was allowed in evidence. The testimony as to whether the deceased was in fact in the article of death at the time he made the statement is somewhat equivocal, though it was perhaps sufficient to justify the court in submitting the matter to the jury. But the court charged the jury as follows: "If you find, from all the facts and circumstances of this case, that after the deceased was wounded, and between the time of receiving the wound and his death, he made certain statements as to who killed him, and the cause of his death, and if you find that these statements were made at a time when he was conscious that he would die,—that he was aware of his approaching death,—I charge you should consider that testimony along with the other testimony in the case, in determining the main issue,—that is, as to whether or not the defendant is guilty as charged, beyond a reasonable doubt." It will be noticed that under the language of this charge the judge did not make the fact of the declarant's being in the article of death one of the prerequisites to his declaration being received as a dying declaration. A statement made "after the deceased was wounded, and between the time of receiving the wound and his death," was not necessarily a statement made while he was in the article of death. The law is plain that the declaration is not admissible unless the declarant was in the article of death at the time of making it. The man may be conscious that he is going to die, and may be aware of his approaching death without being in a dying condition, or, as the law phrase is, "in the article of death."

4. Except in the particulars which have already been discussed, we find no error, but we deem these sufficient to justify the grant of a new trial, as they seem to go to the very vitals of the case.

*Judgment reversed.*

HILL, C. J., dissenting. I do not think that the alleged errors on which the judgment of reversal is based, if errors at all, are of sufficient gravity to require another trial. Under the evidence a verdict for murder would have been amply supported; and a verdict for a lesser grade of homicide was manifestly a concession to

sympathy, and not to doubt. Certainly, in my opinion, the verdict could not have been caused by any of the errors complained of and for which a new trial is ordered.

1. The first assignment of error deemed material by the majority of the court is that the trial judge erred in neglecting entirely to instruct the jury as to the defense of accidental homicide. This theory is not raised by the evidence, but depends solely on the statement of the accused; and it has been repeatedly ruled by the Supreme Court and by this court that no charge on a theory of the defense which depends solely on the statement of the accused need be given, unless there is a written request; and in this case there was no written request to charge on this theory. While the evidence fully negatived the theory of accidental homicide, the statement of the accused does not present a case of killing resulting alone from an accident. The attempt to draw the deadly weapon from the pocket was admittedly intentional. But it is claimed by the accused that although his effort to draw his weapon was intentional, he unintentionally pulled the trigger. He claimed that he endeavored to draw his pistol for the purpose of using it in self-defense. The trial judge fully charged the law applicable to justifiable homicide in self-defense, and to all the grades of homicide. Under the view which I take of the evidence, he charged also the law applicable to that character of accidental homicide logically deduced from the statement of the accused. The overwhelming weight of the evidence shows that the accused was the aggressor; that he made an attack upon the decedent with a deadly weapon for the sole purpose of resenting a blow with the open hand, provoked by his opprobrious language, and the learned trial judge charged to the effect that if the accused made an attack upon the decedent with the unlawful intention to kill unjustifiably, and in this attack the pistol of the accused was discharged accidentally, killing the decedent, the accidental discharge would be no justification. But if it be insisted that the actual discharge of the pistol was due entirely to an accident, and was not a part of an unlawful act, it seems to me that it was hardly necessary for the trial judge to tell the jury that an accidental killing of that character could not in any possible view constitute guilt of any kind. Courts of justice are not kindergartens where the jurors are pupils and the judges are teachers of manifest truisms. Some intelligence should be accorded

to jurors. The law says that they are "upright and intelligent;" and it does seem that the jurors might be presumed to know that a homicide resulting from an accident pure and simple would not make the unfortunate actor guilty of any offense.

2. The second alleged error for which a new trial is granted, dubitante, is in the exclusion of the following testimony: "We [meaning the witness and the defendant] went on down the street together. He had the pistol at that time in his hand, and he unbreeched it and threw out the cartridges, and I says, 'How come you to shoot?' and he says, 'I didn't intend to shoot.'" The majority of the court think that this declaration should have been admitted as a part of the res gestæ. I must confess that I do not know whether this declaration is a part of the res gestæ or not. What is or is not within the rule of res gestæ is one of those legal obstacles that can not be surmounted by any inflexible criterion. The English doctrine that the declarations, to be admissible, must be contemporaneous with the main transaction has been greatly enlarged by the American cases. Under these decisions the element of time is not always material. If the declarations are the spontaneous, impromptu outpourings of the mind, uttered either contemporaneously with or shortly after the main transaction, and are not merely descriptive or narrative of past events, they are admissible as res gestæ. In the present case the declaration was after the commission of the act, when the accused had left the place where the act was committed. It was not spontaneous or impromptu, but was elicited by a question of a third person. If entitled to any weight at all, it was solely due to the credit to be attached to the speaker, and not to the nature of the declaration itself. I can not think that the trial judge (who must necessarily be clothed with a very wide discretion) committed a serious error in excluding from the jury this declaration of the accused as to his intention. The safest test of intention is the nature of the act and the circumstances under which it was committed, and not what the actor says about it after its commission. Besides, the accused got the full benefit of this defense when he stated to the jury that the shooting was accidental; and therefore, if the exclusion of this declaration as evidence was error, it was harmless error.

3. The third alleged error is that the trial judge failed to instruct the jury that they should not consider the alleged dying dec-

laration, unless it was made at a time when the declarant was in the article of death. The statute requires, as a condition precedent to the consideration by the jury of a dying declaration as evidence, that it must be made when in the article of death, and by a person conscious of his condition. **Penal** Code (1910), § 1026. If the judge omitted from his instructions the necessary element, that the declarant must have been actually dying when the declaration was made, to give the declaration probative value, and yet the evidence proved that the declarant was in fact dying when he made the declaration, and that he was conscious of his condition, would this failure amount to reversible error? Is it not the fact that gives probative value? And if this fact is shown, is not the requirement of the law fulfilled? In this case the attending physician testified that when the declaration was made the declarant was "in articulo mortis." He himself repeatedly declared that he was dying. From the time he was shot until his death he never uttered one word of hope, but every word unequivocally indicated consciousness of approaching death. The dying declaration, therefore, had every essential element necessary to make it evidence, and even if the judge neglected to include in the charge one of these elements, it nevertheless existed, and the jury had the right to consider it as evidence. But I think the judge did in substantial effect instruct the jury that the evidence must show that the declarant was in the article of death when he made the declaration, before they could give it evidentiary value. His charge was as follows: "If you find, from all the facts and circumstances of this case, that after the deceased was wounded, and between the time of receiving the wound and his death, he made certain statements as to who killed him, and the cause of his death, and if you find that these statements were made at a time when he was conscious that he would die,—that he was aware of his approaching death,—I charge you should consider that testimony," etc. Taking this charge all together, can it be reasonably doubted that the jury understood that the evidence must show that the declarant was in a dying condition and was conscious of that fact, before they could consider the declaration? How could the declarant have been "aware of his approaching death," unless death was in fact approaching? Of course, all men are in a sense aware of approaching death. The event is certain as to fate, only uncertain as to time. But this is

not what the judge meant. He was speaking of the condition at the time when the declaration was made, and the jury doubtless so understood him. Besides, the dying declaration was admitted for the purpose only of showing the cause of death and the person who killed him. These two facts were not contradicted. The accused admitted the killing. If it be said that the dying declaration further included the statement that the accused cursed the declarant, and the latter slapped the accused with his hand, and the accused shot him, these facts are also abundantly proved by eye-witnesses of the tragedy. In other words, the dying declaration was only cumulative, and disclosed no fact that was not proved.

For the foregoing reasons I regard as immaterial all three of the alleged errors (if errors) on which the judgment of reversal is based. The accused has had a fair trial. He has no just complaint against judge or jury. Every substantial legal right was accorded him, and the evidence would have supported a verdict for a more serious offense.